## Thomas *versus* Harris.

*Dower, when barred by Deed of Widow acting as Administratrix.— Failure of Consideration as a Defence to* scire facias *sur mortgage for Purchase-money, discussed.*

A., owning land, contracted to sell to B., who again sold to C.: before a deed was made A. died, and his administrators, the widow being one, at the instance of the purchaser, proved the contract under the order and decree of the Common Pleas, and executed a deed for the land and all their title and interest therein to C., who then gave a mortgage for unpaid purchase-money, the interest to be applied yearly to a prior dower, and the principal at the death of the widow to the heirs legally entitled thereto: afterwards to perfect title in C. by the agreement of all parties, a judgment obtained against A. in his lifetime was revived against his administrators, and on execution thereon, the land was sold to C.: some time after A.'s widow brought her action of dower, claiming that it was not divested by either sale, and recovered, which recovery, in an action of *scire facias* on the mortgage, was set up to show defect of title and failure of consideration. *Held,*

1. That under the articles, C. was entitled to the conveyance of the entire estate in the land, unencumbered by any right of dower in the widow of the grantor therein:

2. That notwithstanding a deed made by administrators in the ordinary form, in pursuance of an order of court before which a contract of decedents to sell land had been proved, did not divest the widow's right of dower; yet, when acting as administrator, the widow could not only execute the power vested in her by the court, but also convey her own interest:

3. That as her deed granted not only the estate, right, title, &c., of her husband in his lifetime, but also her own estate, right, title, and interest, and as the sheriff's sale thereafter was also valid, she was not entitled to any dower in the land sold:

4. But that the wrongful recovery of dower by her, subsequent to the sales through the imperfect defence thus set up by the purchaser, was not such a " defect of title " in the land sold, nor such a failure of consideration therefor, as could be set up against a recovery on the mortgage for purchase-money: that evidence offered to the defendant of the understanding and agreement of the parties when the deed was made, that the grantee should have a perfect title, to be made by sheriff's sale, though admissible to rebut any presumption arising from the acceptance of the deed, could not aid him, as it tended merely to establish what was apparent without it: and hence, though the rejection of the evidence offered, on the ground that it was an attempt by parol to explain the deed of the administrators and to show that it conveyed a larger estate than its words would indicate, was error, it was not ground for the reversal of the judgment.

Shurtz *v.* Thomas, 8 Barr 359, overruled.

ERROR to the Common Pleas of *Centre county.*

This was a *scire facias sur mortgage,* dated 29th April 1834,

upon the undivided moiety of three hundred and one acres of land, adjoining the borough of Bellefonte, given by William A. Thomas to John Harris, in trust, to secure the payment of a bond of even date, in the penalty of $6000, conditioned for the payment of $180 (being the interest of $3000 of the purchase-money) to Mrs. Elizabeth Simpson, formerly Mrs. Elizabeth Smith, widow of James Smith, the elder, deceased, and wife of Michael T. Simpson, or other person legally entitled to receive the same, annually, during the life of the said Elizabeth, and at her death, the principal to whomsoever at that time should be legally entitled to receive the same. The defendant pleaded payment with leave, &c.

On the trial, the plaintiff gave in evidence the bond and mortgage; proved that Mrs. Elizabeth Simpson, the widow of James Smith.the elder, died August 16th 1856; that James Smith the elder left two sons, James and William; that James Smith the younger died, leaving no children, but a widow, who is the daughter of Cornelius Dale, surviving him; that the widow afterwards married, and is now the wife of Frederick Shurtz; and rested.

The defendant then gave in evidence articles of agreement, dated 31st July 1833, between James Smith the younger, and Franklin B. Smith, in which he covenanted to sell and convey, on the 1st day of April next ensuing the date, by a good and sufficient deed or deeds of conveyance, with special warranty, " the land described in the mortgage given in evidence by the plaintiff," to hold to the said Franklin B. Smith, his heirs and assigns, in fee simple.

On the 5th December 1833, by articles of agreement, Franklin B. Smith sold the land purchased from James Smith the younger, in his lifetime, to William A. Thomas, the defendant, covenanting to convey, on the 1st day of April 1834, by a good and sufficient deed or deeds of conveyance, with general warranty, the lands described in the mortgage.

James Smith, the younger, having died, as was proved by the plaintiff intestate and without issue, his wife, Mary Smith, and her father, Cornelius Dale, took letters of administration on his estate, and on the 24th March 1834, the above contract was proved in the Court of Common Pleas, under Act of 1792.

The contract having been thus duly proved, Mary Smith, administratrix, and Cornelius Dale, administrator of, &c., of James Smith the younger, deceased, as aforesaid, presented their petition to the court, praying " leave to make and execute a deed of conveyance to the said William A. Thomas and his heirs, for the said tract of land, with the appurtenances, according to the true intent and meaning of the said contract," whereupon the said court, upon the 28th day of April 1834, ordered and decreed

that the said Mary Smith, administratrix, and Cornelius Dale, administrator, should make and execute a deed to the said William A. Thomas and his heirs, which was done April 29th 1834, in consideration of $10,500, including "also all the estate, right, title, interest, claim, and demand whatsoever of him, the said James Smith, in his lifetime, and of them, the said Mary and Cornelius, since his decease, in law or equity, or otherwise, of, in, to, or out of the same."

To show the intention of all the parties to the deed of the 24th April 1834, to perfect the title of William A. Thomas, his heirs and assigns, to the entire estate in the lands conveyed, the defendant gave in evidence a judgment in the Common Pleas of Centre county, at the suit of Franklin B. Smith and John Irvin, trading under the firm of Smith & Irvin, for the use of Henry F. Tammany, against James Smith, entered to No. 51, November Term 1830, which, by the agreement in evidence, Franklin B. Smith had agreed to pay on receiving a good title out of the purchase-money in which Mary Smith, administratrix, and Cornelius Dale, administrator of James Smith, deceased, had been substituted as defendants, and the judgment revived against them as administrators of, &c., of James Smith, deceased, for the sum of $2460.95, and on which a writ of *fieri facias* had issued to No. 16, November Term 1834, by virtue of which the interest late of James Smith, deceased, in and to the lands described in the deed of 29th April 1834, was taken in execution and condemned, and under a writ of *venditioni exponas*, issued to January Term 1835, was sold and purchased, in confirmation of his title, by William A. Thomas, to whom a deed was made by the sheriff March 25th 1835.

To show defect of title and failure of consideration, the defendant then gave in evidence from the records of the Court of Common Pleas of Centre county, No. 62, August Term 1846, an action of dowry, *unde nihil habet*, Frederick Shurtz and Mary his wife, formerly Mary Smith, widow and relict of James Smith, deceased, against William A. Thomas, in which, on the 25th April 1848, judgment was entered in the court below for defendant, which judgment was reversed in the Supreme Court, and judgment entered for the plaintiff.

After several ineffectual attempts to set out the dower, an agreement was made, by which Thomas was to pay the sum of $125 1st April 1850, and the like sum the 1st day of April annually thereafter, to the said Mary Shurtz, for and during the term of the natural life of said Mary, for and in lieu of dower, "it being distinctly understood that this agreement is to have the like effect, and no other, in all respects as though the sheriff's inquest had set off to the plaintiff the one undivided third part of the undivided moiety of the premises described in the said

[Thomas *v.* Harris.]

writ, and the plaintiffs had been placed in possession thereof, agreeably to the command of the writ, and the said plaintiff had surrendered possession thereof to said Thomas, he paying therefor the said sum of $125 annually, as above stated."

The defendant next gave in evidence the receipts of the plaintiff, in the said action of dower, for the ten annual instalments, amounting, without interest, to the sum of $1250, and then called

Bond Valentine, Esq., by whom he offered to prove "that he was the attorney and counsel of William A. Thomas, and that William W. Potter, now deceased, was the attorney and counsel of Mary Smith and Cornelius Dale, administrators of, &c., of James Smith, deceased; that William A. Thomas and his counsel, and Mary Smith and Cornelius Dale and their counsel, met at the office of William W. Potter, in the borough of Bellefonte, that the subject of the conveyance about to be made by James Smith's administrators to William A. Thomas was introduced and talked over; that William A. Thomas positively refused, in the presence and hearing of Smith's administrators, and in the presence of their counsel, to accept any conveyance in execution of the articles of agreement but such as would vest in him, his heirs and assigns, the full and entire estate to which, under the articles of agreement, he was entitled; that Smith's administrators replied that he was entitled to and should have such conveyance, and that they would execute any papers necessary to vest the same; that the deed of James Smith's administrators to William A. Thomas, in evidence, was produced and read; that William W. Potter, in the presence and hearing of all the parties, asserted that it conveyed to and vested in William A. Thomas, his heirs and assigns, the entire estate, in fee simple, clear of all encumbrance, as fully as Thomas was entitled to receive the same, under the articles of agreement in evidence; that if there was any doubt upon that subject in the mind of Mr. Thomas or his counsel, Smith's administrators, his clients, would agree to the revival of judgment No. 59, November Term 1830, on which the estate could be sold and purchased by Mr. Thomas, and that this would remove all possibility of doubt, and vest the entire estate in Mr. Thomas; that with the distinct understanding and agreement that this should be done, and that the entire estate should be vested in him, the deed was received by William A. Thomas, and the bond and mortgage in question in this suit, to John Harris, in trust, delivered to Smith's administrators; that the judgment was revived, and the sale and purchase made, as agreed upon by the parties at the time of the delivery of the said deed; that but for this assertion of William W. Potter and his clients, and this agreement of the parties, the deed would never have been accepted, or the bond and mortgage given."

[Thomas *v.* Harris.]

This offer the counsel for the plaintiff objected to as incompetent to explain the deed; that the acceptance of the deed by Mr. Thomas was a waiver of his right to claim a conveyance clear of the widow's dower, that it cannot be explained by parol, and that it cannot be shown by parol that it was the intention of the parties and their counsel to execute a deed that would convey a larger estate than that named in the instrument.

The objection was sustained by the court, the evidence offered rejected, and a bill of exceptions sealed by the court.

The defendant thereupon rested, and the court directed the jury, upon the whole evidence before them, to find for the plaintiff.

There was a verdict and judgment accordingly. Whereupon the defendant sued out this writ, and assigned for error the rejection of the evidence offered as above, and the instruction to the jury to find for the plaintiff.

*McAllister & Beaver*, for plaintiff in error.—A defect of title constitutes a valid defence to an action for unpaid purchase-money, whether the action be debt on bond or *scire facias*, or ejectment on a mortgage: Steinhauer *v.* Whitman, 1 S. & R. 438; Hart *v.* Porter's Executors, 7 Id. 61; Fuhrman *v.* Loudon, 13 Id. 391; Christy *v.* Reynolds, 16 Id. 260. But the exception is equally well settled, and when the facts and circumstances surrounding the case lead to the conclusion, as in Lighty *v.* Shorb, 3 Penna. Rep. 453, that the vendee, at the acceptance of the deed, and delivery of his obligations for the purchase-money, "had not merely constructive but actual notice of the defect in the title, and that there was a mutual understanding that the purchase-money should not be detained as a security for it, the principle does not apply." A purchaser can waive the whole or any portion of his legal rights; he can accept, as a compliance with the terms of an agreement, *less* than that to which by law he is entitled, and if Thomas did waive his legal rights, and knowingly accept an encumbered title, he is within the exception, and excluded from the benefit of the rule. But such waiver cannot be fairly inferred from his acceptance of the deed of 29th April 1834,

1. Because, prior to the case Riddlesberger *v.* Mentzer, 7 Watts 144, decided at May Term 1838, the prevailing opinion even of the profession was that a contract of a decedent proved, under the Act of 1792, and a deed made by administrators in the ordinary form, in pursuance of a decree of the court, divested the widow's dower.

2. Because the words "also all the estate, right, title, interest, property, claim, and demand whatsoever of them, the said Mary and Cornelius, since his decease, in law or equity, or otherwise,

of, in, to, or out of the same," being unnecessary and unusual in the execution of a power, would seem to have been intended to embrace and convey any right to dower which Mary Smith, the widow, might possibly have in the lands described in the deed.

3. Because the acquiescence, as well of the widow as of James Smith's administrators, in the seizure on execution, condemnation, and sale of the estate of the decedent, shortly after the delivery of the deed, upon a judgment which the vendee was to have paid, or indemnified against on receipt of the deed, indicates most clearly the intention of all the parties thus to remove any suspicion which rested upon the title of Mr. Thomas, and to convey the same disencumbered of dower.

The testimony of Bond Valentine, Esq., would have shown exactly what did transpire at the time of the delivery of the deed, and that there was no waiver of any right by Mr. Thomas, but a manifest and avowed intent by all parties to execute the entire agreement; that the seizure in execution, condemnation, and sale, was made at the instance of James Smith's administrators, and solely with a view to vest in William A. Thomas, beyond all controversy, the estate to which by the articles of agreement he was entitled. The rejection of this offer we submit was error: Crotzer and Others *v.* Russell, Executor of Lyon, 9 S. & R. 78; Hart *v.* Porter, 5 Id. 204; Goucher *v.* Helmbold, 1 Miles 407.

*James T. Hale,* for defendant in error.—The offer made by the defendant in this case was for several good reasons properly rejected. The substance was to prove and set up as a matter of defence, the existence of a defect in the title of James Smith, which was known at the time of the acceptance of the deed by Mr. Thomas. Although equity will permit a vendee to allege as matter of defence to an action for the purchase-money a defect in the title agreed to be conveyed, yet to this general principle there are several exceptions which are as well defined and as well established as the rule itself.

1. A vendee cannot set up a known encumbrance or defect of title. 2. The principle does not apply to judicial sales, nor 3. To cases where the conveyance has been made in pursuance of a judicial decree. See Shurtz *v.* Thomas, 8 Barr 360; Riddlesberger *v.* Mentzer, 7 Watts 144. If the facts embraced in the offer be true, then Mr. Thomas has by his own neglect allowed a recovery in the action of dower by Mrs. Shurtz, and cannot visit the consequences of his supineness upon the heirs of Smith, who were no parties to the action. He asserts what would have constituted a complete answer to the action of dower, and yet asks to defalk against the heirs the money paid to Mrs. Shurtz because he failed to allege this defence. It is moreover quite clear that even if he were entitled to set up the dower as

a defence to the mortgage, he can not defalk the amounts paid by him in pursuance of a compromise of an action to which neither the administrators nor heirs of Smith were parties.

The opinion of the court was delivered, June 26th 1862, by

STRONG, J.—The defence set up by the mortgagor to the scire facias, in this case, was an alleged failure of consideration. The mortgage was given to secure the unpaid purchase-money of a tract of land of which James Smith had died seised, and which in his lifetime he had by articles of agreement covenanted to convey by good and sufficient deed, with special warranty, unto Franklin B. Smith. The rights of Franklin B. Smith, under the contract, were subsequently transferred to William A. Thomas, the mortgagor and the defendant. After the death of James Smith, the contract was duly proved, and under an order of the Court of Common Pleas, a deed for the land was made to Thomas by the administratrix and administrator of the decedent's estate, who were Mary Smith his widow, and Cornelius Dale. The deed recited the stipulations of the articles of agreement, together with the order of the court, and granted all the estate of James Smith in the land, and all the estate of Mary Smith and Cornelius Dale in law and in equity. It is perhaps not of much consequence, but still a fact, that the deed was signed by the grantors without designating themselves as administrators. At the time when it was made, there was an unsatisfied judgment which had been recovered against James Smith, in his lifetime, and which was a lien on the land. Upon this judgment a scire facias had issued. Mary Smith and Cornelius Dale had been made parties, and judgment of revival had been entered. Immediately after the execution and delivery of the deed above described, an execution was issued on this judgment, the land was levied upon as the property of James Smith, and sold at sheriff's sale to Thomas, to whom the sheriff made a deed. The object of this sale manifestly was to remove any doubts in regard to the title acquired by Thomas, and to vest in him an undoubted fee simple, clear of any encumbrances, or any right of dower of Mrs. Smith, and had the testimony of Bond Valentine been received, which was offered on the trial, and rejected by the court, it would have proved that it was made in pursuance of an arrangement between the purchaser and Mary Smith and Cornelius Dale, the personal representatives of James Smith, entered into at the time when their deed was received, and for the avowed purpose of vesting the entire unencumbered ownership of the land in William A. Thomas.

Now, it is indisputable that, under the articles of agreement, Thomas was entitled to a conveyance of the land unencumbered by any right of dower in James Smith's widow. If such a right

exists, and was not extinguished by the administrator's deed and the sheriff's sale, there is a defect in the title bargained for, and the purchaser has not got what he was entitled to receive, the full consideration for his mortgage, unless he agreed to waive his rights and accept an imperfect title in satisfaction of the vendor's covenants.

In Riddlesberger *v.* Mentzer, 7 Watts 141, decided in 1838, four years after the completion of this sale, the law was declared to be that a deed made by administrators, in the ordinary form, in pursuance of an order of the court before which a contract of the decedents to sell lands had been proved, did not divest his widow's right of dower. The mere execution of the power does not affect her right or estate. But there is no reason why the widow, when administratrix, should not be able both to execute the power vested in her by the court, and to grant her own interest. Undoubtedly she can. She is "*sui juris,*" and might convey her right of dower by a separate deed. And if so, she may convey it in the same deed in which she executes the trust. And how can it be maintained that it was not done in this case? Her deed not only granted all the estate, right, title, interest, and property which was of James Smith, in his lifetime, which alone the court had ordered her to grant, but also her own estate, right, title, and interest in law or equity. Certainly such are the words of her deed. Undeniably they are large enough to convey her dower, and the conveyance of her dower, in addition to the interest of her husband, was no more than the purchaser was entitled to, as the consideration for the sum of $10,500, which he had agreed to pay, and which she received. It does not satisfy us to say, as was said in Shurtz *v.* Thomas, 8 Barr 359, where the same deed was under review, that the words of the grant of the widow's interest are to be restrained to the occasion, or to the subject-matter about which the parties were dealing. It is true, that in the construction of releases, general words of discharge are held to be confined to the particular subject of the contract, and perhaps the rule is measurably applicable to the construction of deeds of grant. But what was the occasion in this case, and what was the subject-matter of the contract? The deed itself gives a plain answer. It recites the substance of the articles of agreement, the obligation of James Smith to make title to the land to the purchaser, and his right or that of his administrators to demand and receive for the title $10,500. To consummate that contract the parties met, the widow to receive the money, and Thomas to receive the stipulated transfer of the land. The widow's right to the money was not unconditional. Thomas was not bound to pay it for anything less than a conveyance of the land unencumbered by any claim of the widow to dower; in other words, for nothing less

[Thomas *v.* Harris.]

than James Smith's estate, and that of his widow. Her right of dower then belonged to the occasion, and was a part of the very subject-matter of the contract. There is therefore nothing to detract from the significance of the words of grant of all Mary Smith's interest, or to limit their natural meaning. It is true, the word "dower" was not used to describe the subject of the grant, but the words "estate, title, interest, and property" were, and they are still more comprehensive. It would be hard to conjecture for what purpose those words were employed, unless it was to assure to the purchaser some interest, which the grantors had personally, beyond that which they had power to convey as administrators. The non-use of the word "dower" may be readily accounted for. At the time when the deed was made, Riddlesberger *v.* Mentzer had not been decided, and it was far from being understood that a widow retains dower in lands which her husband had contracted to sell, and which have been conveyed by his administrators after his death, by order of a court, on proof of the contract.

And were this not so; were there nothing in the deed to divest the widow of James Smith of her dower in the land, and to pass it with no defect of title to the purchaser, we are utterly unable to perceive why the sheriff's sale, made on a judgment obtained against James Smith in his lifetime, and which therefore was a lien on his widow's initial right of dower, did not extinguish it. Beyond doubt, it would have wrought that effect, had any other than Thomas bought at the sale. The whole difficulty in this case arises out of the opinion of the court delivered in Shurtz *v.* Thomas, 8 Barr 359, an action brought by this widow to recover dower out of the lands which had been conveyed as above described, to the defendant. In that action a case was stated, presenting most of the facts, though not all, which now appear, and this court held that she was entitled to dower. The opinion was that of a bare majority of the court (two judges dissenting), and it is exceedingly difficult for us to adopt the views which that majority thus entertained. The very eminent judge who delivered the opinion, took the position that the sheriff's sale did not bar the widow's claim to dower out of the lands bought by Thomas, because under the articles of agreement he was bound to pay the heirs on the land out of the stipulated purchase-money. He held, therefore, that permitting the sheriff's sale was bad faith on the part of the purchaser;—having the purchase-money in hand with an obligation to pay the judgment, as to him it must be considered as having been paid. As a purchaser under a judgment known by him to have been paid, acquires nothing by his purchase, the learned judge thought nothing passed to Thomas by the sheriff's sale, and that the widow's dower remained in her. This is incomprehensible, as applied to the case. It seems to rest the

invalidity of the sheriff's sale upon the assumption of bad faith in permitting it. Of course it must be intended bad faith to the widow. But Thomas owed her nothing. She had reposed nothing in him, and he had no faith to keep with her. The judge entirely overlooked two important facts. The one is that before the sheriff's sale, and before Thomas was bound to pay any money, the executory vendor had died, leaving a widow. The other fact is, that under the article of agreement the vendee's right extended to a perfect title, diminished by no right of dower in Mary Smith, and that so long as such a title was withheld from him, he could be called upon to pay nothing. Less than an unencumbered and perfect title he was not bound to receive, and until that was furnished he had no funds in hand to pay any judgments against James Smith. Let it be that he had agreed to clear the land of liens, yet it was on condition that the title, when clear, should not be defective. Thus, when it is asserted that dower remained out of the land, it is also asserted, in effect, that there was no duty resting on Thomas to pay judgments. Where, then, was the bad faith either towards the widow, or towards the estate of James Smith? And how can the judgment under which the land was sold be treated as having been constructively paid? I say constructively, for actual payment is not pretended.

In Shurtz *v.* Thomas, Judge Gibson assumed that the purchaser voluntarily accepted a conveyance which left the widow's dower remaining in her *act.* interest, in satisfaction of the articles, and as an equivalent for the entire and unencumbered interest to which he was entitled. Hence, he inferred she was entitled to dower, notwithstanding the deed and the sheriff's sale. If the premises be correct, the inference would have been well drawn; for if he accepted a defective title in full satisfaction for his ten thousand five hundred dollars, he was bound to pay the judgment, in addition to assigning the dower. He could gain nothing by failure to do his duty, and as to him the judgment might well have been considered paid.

It may be remarked in passing, that if this is so, the defence set up to the *scire facias* in the case is gone. There was no failure of consideration, for the defendant obtained all that for which he gave his mortgage.

But we are now inquiring after the effect of the sheriff's sale. What evidence is there that warrants the assumption of the judge? How does it appear that Thomas agreed to receive an imperfect title in lieu of one embarrassed by no widow's dower, and pay all the purchase-money as if he had received full compensation? Undoubtedly a purchaser by articles can waive any portion of his legal rights. He can accept, in satisfaction of the agreement, less than the agreement entitles him to exact, and if he does, he cannot afterwards retract his waiver and defend against the pay-

[Thomas v. Harris.]

ment of the purchase-money promised, by showing that he has not obtained all which his vendor originally promised to assure him. The principle is exhibited in Hart v. Porter, 5 S. & R. 201, and in Lighty v. Shorb, 3 Penna. Rep. 477, where it seems to have been ruled that if a purchaser knows of a defect or encumbrance when he takes his deed, without stipulating for a covenant or other security against it, the presumption is that he assumes the risk. Such a presumption is not however conclusive, *juris et de jure*. It may be rebutted, Drinker v. Byers, 1 Penna. Rep. 528. It is even doubted whether it is applicable at all to the case of a known encumbrance, as distinguished from a defect of title. But see Woolbert v. Lucas, 10 Barr 73. In the case now before us, the only ground for a presumption that the purchaser agreed to run the risk of any claim of the widow to dower, is that he took a deed from her under a decree of the court for the estate of the deceased husband, and also for her own interest, when, it is said, he knew or should have known that she was entitled' to dower in the land if she conveyed only her husband's interest. No evidence of actual knowledge is in the case. The purchaser knew, because he was bound to know, what the law was, though it was then all uncertain. He is chargeable, therefore, only with constructive notice of any defect in the title. In such a case there is no reason for a presumption that a purchaser binds himself to pay the purchase-money, no matter what may prove the defects of title. It is only when he has actual knowledge of the defect that he is presumed to waive full compliance with the covenant of his vendor. · Were it not so, a vendor's deed on record to a third person would not excuse a subsequent purchaser from him from paying all the agreed purchase-money, after he has accepted a deed—an injustice too revolting to find any place in the law. The assumption, then, made in Shurtz v. Thomas, that Thomas assumed the risk of any dower, and accepted an imperfect title in satisfaction of the articles of agreement, is entirely unfounded, and the inference drawn from it is without support. And the testimony of' Bond Valentine offered in this case, had it been received, would have been affirmative proof to the contrary. It would have shown that the purchaser agreed to assume no such risk, and consequently that he was under no obligations to pay the judgment under which the land was sold. Assuming that the witness would have proved what he was offered to prove, the case would have stood thus: It was agreed when the deed was given, and in consideration of the payment of the purchase-money, a part of which was to be secured by the mortgage in suit, that Thomas should have a clear and perfect title, such as would pass to him through an unimpeachable sheriff's sale. To secure such a title to him it was arranged that a sheriff's sale should be effected on

7 Wr.—16

[Thomas *v.* Harris.]

one of the existing judgments, which the defendant had in the articles of agreement promised to pay on receiving a good title. In the face of such evidence it would be preposterous to say that the defendant had agreed to take the title, such as it was, and pay the whole sum stipulated as the price of the complete ownership.

It was contended, however, in the court below, and so the court ruled, that the evidence offered was inadmissible, because it was an attempt by parol to explain the deed of the administrators, and to show that it conveyed a larger estate than its words would indicate. Not so. The evidence was not aimed at the deed. It did not add to, contradict, alter, or explain it. It left the deed to speak for itself. Its tendency was only to rebut any presumption which could be alleged to have arisen from the acceptance of the deed, a presumption which, if it had arisen, was as we have seen, one of fact, open to rebuttal. The evidence should not then have been rejected, for the reasons here assigned.

But its admission could not have aided the defendant below. It was more important to the plaintiff than it was to him. True, it would have been weighty to rebut the presumption that Thomas agreed to dispense with any of his rights, secured to him by the article of agreement, had there been any such presumption. There was nothing, however, to raise it, and the evidence therefore only tended to show what was apparent without it:—that the sheriff's sale was rightly made; that there was no defect of title, or failure of consideration for the mortgage; that Mary Smith was not entitled to dower in the land; and that consequently the defendant was without defence. We cannot reverse the judgment for the rejection of such evidence when offered by the defendant.

We do not overlook the fact that, notwithstanding her deed, and notwithstanding the sheriff's sale, the widow, now Mrs. Shurtz, has actually recovered dower in the lands conveyed to the defendant, and that in due course of law. In an action of dower which she brought ten years after the defendant's purchase, a case was stated setting forth most of the facts upon which we have commented, though not all of them; and on the case stated judgment was given for the widow. It was doubtless a great hardship, but it is remediless. Had the defendant there produced all the evidence in his power; had he shown what he offers to show now, that he did not agree to take the land with the widow's right of dower upon it, and that in pursuance of an understanding with her, and with the other administrator of her husband's estate, it was sold under one of the judgments which were a lien upon it, for the avowed purpose of making a perfect title, she must have been defeated, even though the court did

[Thomas v. Harris.]

think she was not bound by her deed. In view of all the facts, success in her action would have been incredible. This, however, has no bearing on the present case. The question now is, not whether the defendant has been evicted in whole or in part; not whether he has lost a part of what was conveyed to him, but whether all was conveyed that the parties contemplated when the bargain was consummated and the mortgage was given. If it was, there has been no failure of consideration, though, in consequence of mistake or misfortune, a part of the land has been since wrested from him. If he took a perfect title under the deed and the sheriff's sale, as we think he did, or if he took an imperfect title in satisfaction of the vendor's covenants, as was the opinion of the court in Shurtz v. Thomas; in either event he obtained all that for which he gave his mortgage, and he is therefore defenceless. Conceding that he was wronged in the action of dower, he cannot protect himself against the present claim with the payments which he has made in satisfaction of that judgment. That would be to recover back what has been recovered from him by judgment of the court, not permissible in any case, and doubly so in this, where the widow is only one of the *cestuis que use*, for whose benefit the *scire facias* is prosecuted.

The judgment is affirmed.

Woodward, J.—It was well understood upon the argument that Mrs. Shurtz, formerly Mrs. Smith, had received some $1200 by virtue of the judgment rendered in her favour in Shurtz v. Thomas, 8 Barr 359, and that her interest in the present suit was equal to what had already been paid to her by Thomas in that case, Harris, the nominal plaintiff here, being only trustee for her and the other heirs of James Smith. Concurring as I do in overruling the judgment in Shurtz v. Thomas, I would not allow her trustee to recover for her again the moneys she has already received. I think Thomas is entitled to an equitable set-off to that amount. It is unpaid purchase-money for which he is defending, and he ought to be credited with what she has wrongfully taken out of his pocket.

In this respect I would make a different application of the present ruling from that which the majority makes; as to all else in the judgment now rendered I fully concur.